UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
In re                                                          :
                                                               :     Chapter 11
PARKCHESTER ORAL AND MAXILLOFACIAL    :
SURGERY ASSOCIATES PC,                             :     Case No. 23-11015 (MEW)
                                                               :
           Debtor.                                         :
------------------------------------------------------------------x

## DECISION REGARDING THE APPOINTMENT
## OF A PATIENT CARE OMBUDSMAN

A P P E A R A N C E S:

OFFICE OF THE UNITED STATES TRUSTEE
New York, New York
  By:  Daniel Rudewicz, Esq.

WEINBERG, GROSS & PERGAMENT LLP
Garden City, New York
*Attorneys for Debtor Parkchester Oral and
Maxillofacxial Surgery Associates PC*
  By:  Marc A. Pergament, Esq.

**HONORABLE MICHAEL E. WILES
UNITED STATES BANKRUPTCY JUDGE**

The Office of the United States Trustee (the "**UST**") filed an application on July 12, 2023 [ECF No. 16] seeking the appointment of a patient care ombudsman pursuant to section 333 of the Bankruptcy Code. *See* 11 U.S.C. § 333. Debtor Parkchester Oral and Maxillofacial Surgery Associates PC ("**Parkchester**") filed opposition papers on July 24, 2023 [ECF No. 25], and the UST filed a reply on July 31, 2023 [ECF No. 28]. The Court heard argument at a hearing on August 2, 2023. At the end of the hearing, and in an Order entered on August 4, 2023 [ECF No. 36]), the Court directed Parkchester's counsel to file an affidavit as to the relevant facts. The Court also directed the UST to inform the Court as to whether it contested any of the facts set forth in the affidavit, in which case an evidentiary hearing would be held. The Court further

1

ruled that if the UST did not contest the facts set forth in the affidavit then the Court would issue a ruling based on the legal arguments made on August 2, 2023.

The required affidavit was filed on August 3, 2023 [ECF No. 33], and the UST has informed the Court that it does not contest any of the facts set forth in the affidavit.

### Procedural Issue

Before addressing the merits I must first resolve a procedural issue that the parties did not raise but that the Court identified at the August 2 hearing.

Parkchester filed the petition that commenced this case on June 28, 2023. It identified itself as a "health care business" in its bankruptcy petition. Section 333(a)(1) of the Bankruptcy Code provides as follows:

> If the debtor in a case under chapter 7, 9 or 11 is a health care business, the court shall order, not later than 30 days after the commencement of the case, the appointment of an ombudsman to monitor the qualify of patient care and to represent the interests of the patients of the health care business unless the court finds that the appointment of such ombudsman is not necessary for the protection of patients under the specific facts of the case.

See 11 U.S.C. § 333(a)(1). The UST filed a motion seeking the appointment of a patient care ombudsman on July 12, 2023, and the motion was scheduled for hearing on August 2, 2023. It was not until the Court prepared for the hearing on that motion that the Court knew that section 333 had been implicated. By that time, the 30-day statutory deadline had already passed.

Rule 2007.2 of the Federal Rules of Bankruptcy Procedure further states that the Court "shall" order the appointment of an ombudsman unless the court determines that it is unnecessary based on a motion filed by a party in interest "no later than 21 days after the commencement of the case or within another time fixed by the court." See Fed. R. Bankr. P. 2007.2(a). Such an appointment is not irrevocable, as Rule 2007.2(d) provides that a party in interest may move at any time to terminate the appointment of a patient care ombudsman, and

2

that the Court may grant such motion if the Court finds that the appointment is not necessary to protect patients.  *See* Fed. R. Bankr. P. 2007.2(d).  In this case, Parkchester filed an opposition on July 24 which plainly asked the Court to rule that a patient care ombudsman is not needed.  I will treat the opposition papers as a cross-motion on Parkchester's behalf, even though it was not denominated as such.  However, Parkchester's papers were filed after the expiration of the 21-day period specified in Rule 2007.2.

Rule 2007.2(a) says that the Court "shall" appoint an ombudsman if an appropriate motion is not timely filed.  However, no patient care ombudsman has been appointed to date, and the parties have squarely put before me the question of whether one is needed.  Parkchester's motion is plainly timely under Rule 2007.2(d), and it would make no sense to appoint an ombudsman under Rule 2007.2(a) at the very time that a motion is pending under Rule 2007(d) that asks the Court to terminate such an appointment on the ground that an ombudsman is not needed.  In addition, Rule 2007.2(a) permits the Court to modify the 21-day deadline and to fix a different time for the filing of a motion under that provision.  There is nothing in Rule 2007.2(a) that states that a different deadline must be set before the expiration of the 21-day period.

For purposes of Rule 2007.2, I will exercise my discretion to set July 25, 2023 as the deadline for the filing of the motion and I will treat Parkchester's opposition papers as a timely motion under both Rule 2007.2(a) and 2007.2(d).  I understand, based on the hearing on August 2, that the parties do not object to the foregoing procedural decision.  Unfortunately, the statutory 30-day deadline in section 333 for action by the Court has already passed, but it is too late to change that.  All we can do now is to resolve the parties' dispute.

## **Legal Standards**

Parkchester expressed some reservations as to whether it really should be treated as a "health care business" as that term is defined in section 101(27A) of the Bankruptcy Code. *See* Parkchester Opposition [ECF No. 25] at ¶ 4. However, Parkchester has conceded that is a health care business for purposes of this motion. The only issue is whether the appointment of an ombudsman is necessary for the protection of patients under the specific facts of this case. Parkchester bears the burden of showing that an ombudsman is not needed. *In re Starmark Clinics, LP*, 388 B.R. 729, 734 (Bankr. S.D. Tex. 2008).

Judge Glenn of this Court recently had occasion to review the factors that other courts have considered in deciding whether a patient care ombudsman is needed for the protection of patients. *See In re Sameh H. Aknouk, Dental Servs., P.C.*, 648 B.R. 755, 761 (Bankr. S.D.N.Y. 2023). As he noted, prior decisions have identified nine non-exclusive factors that are relevant:

(1) The cause of the bankruptcy;

(2) The presence and role of licensing or supervising entities;

(3) The Debtor's past history of patient care;

(4) The ability of the patients to protect their rights;

(5) The level of dependency of the patients on the facility;

(6) The likelihood of tension between the interests of the patients and the debtor;

(7) The potential injury to the patients if the debtor drastically reduced its level of patient care;

(8) The presence and sufficiency of internal safeguards to ensure appropriate level of care; and

4

>    (9)    The impact of the cost of an ombudsman on the likelihood of a successful reorganization.

*Id.; see also In re Valley Health Sys.,* 381 B.R. 756, 761 (Bankr. C.D. Cal. 2008); *In re Alternate Family Care*, 377 B.R. 754, 758 (S.D. Fla. 2007). Other factors to be considered include (1) the high quality of the debtor's existing patient care; (2) the debtor's financial ability to maintain high quality patient care; (3) the existence of an internal ombudsman program to protect the rights of patients; and/or (4) the level of monitoring and oversight by federal, state, local, or professional association programs which renders the services of an ombudsman redundant. *Aknouk*, 648 B.R. at 761; *Valley Health*, 381 B.R. at 761 (*citing* 3 Collier on Bankruptcy ¶ 333.02, at 333-4 (15th ed. 2007).

The UST suggests that the Court should not use the foregoing factors because, in the UST's view, they "will likely lead to the Court declining to appoint an ombudsman." *See* UST Reply [ECF No. 28] at 3. The UST contends that there are 15 reported decisions since 2007 in which the foregoing factors were applied, and that in each of those 15 cases the courts determined that an ombudsman was not needed. The UST concludes from these outcomes that the factors themselves must be improperly skewed.

I am not persuaded by the UST's results-oriented analysis. For one thing, it is plain that in the vast majority of cases involving health care businesses an ombudsman is appointed without opposition and certainly without the issuance of a written opinion. In other words, the 15 reported decisions that the UST has cited are hardly the entire universe of cases in which courts have applied the relevant standards. It is not surprising that one only finds reported decisions in cases where serious grounds for opposition to the appointment of an ombudsman have been raised.

5

Nor does it trouble me, or strike me as a departure from the statutory language or intent, to hear that there are 15 other cases in which courts have found that ombudsmen are not needed. The definition of "health care business" is very broad. Section 333 recognizes that an ombudsman may not be required in every such case, and so by its terms it permits courts to dispense with the requirement. It is not surprising at all that over the past 16 years there are 15 reported decisions involving dentists' practices and similar businesses that technically qualify as health care businesses but as to which courts have concluded that ombudsmen are not necessary.

Most importantly, I am not persuaded that the listed factors are somehow misguided without some explanation of why that allegedly is the case. In this regard, the UST has not identified any issue with the factors or their relevance to the issue to be decided. The UST has stated generally that the factors are "unnecessary or redundant," citing to a law review article that urges courts to adopt a simplified set of factors. *See* Nicholas A. Huckaby, *Toward a Workable Standard for Appointing A Patient Care Ombudsman: Proposed Changes for Applying § 333 of the Bankruptcy Code*, 48 U. Tol. L. Rev. 367, 379-81 (2017). Mr. Huckaby advocates that courts replace the nine factors listed above with a simpler three-step test under which the court considers "whether patient care is a concern in the case," whether safeguards are in place to protect patients, and "the financial impact an ombudsman will have on the debtor." *Id.* at 369. Frankly, however, I see little difference between that simplified formulation and the list of factors that is cited above. The listed factors are in many ways are just sub-parts of the inquiry that help to guide a court in making the three-part decision that Mr. Huckaby has recommended.

Notably, the UST has not identified any particular one of the factors cited in prior cases that UST believes is inappropriate or irrelevant. Some overlap, or redundancy, is a common problem whenever courts compile lists of factors to guide an exercise of discretion. It is clear

6

that the factors that are listed are just guides to a decision, with no one factor being decisive and with the factors having only such weight as a court deems proper in an individual case. Since the factors are guides (not scoresheets), the mere presence of some redundancy is not itself problematic.

I do, however, have one caveat of my own as to the factors that prior decisions have identified. One of the listed factors is "the impact of the cost of an ombudsman on the likelihood of a successful reorganization." It would make perfect sense to consider this factor if section 333 had directed us to weigh the costs and benefits of the appointment of an ombudsman, or to consider the impact of such an appointment on the debtor or on the case as a whole. However, that is not what section 333 provides. Section 333 directs the court to determine whether an ombudsman is "necessary for the protection of patients" – not whether it is "convenient," or "cost-effective," or whether it might interfere with a debtor's financial reorganization. I therefore will not apply this particular factor in determining whether the appointment of a patient care ombudsman is needed in this case.

## Application of the Factors to the Facts of This Case

The affidavit of Marlon Moore, M.D., the president and sole shareholder of Parkchester [ECF No. 33], was submitted to provide factual support for arguments that were stated more completely in the opposition papers that Parkchester filed [ECF No. 25.] The affidavit is considerably more conclusory than I would have preferred. However, the UST have conceded the accuracy of the facts set forth in the affidavit, the most important of which is the fact that Parkchester has not had any history of problems with patient care and does not currently have any issues with patient care. The UST has made no suggestion to the contrary. Furthermore, it is undisputed that Parchester treats patients only on an out-patient basis, and it is evident that

7

patients are not so dependent on Parkchester that they require an ombudsman to safeguard them. I conclude that no patient care ombudsman is required in this case. I reach that conclusion after application of the factors cited in prior decisions, and as explained below I would reach the same conclusion if I were to apply the simplified standard that was recommended in the article cited by the UST.

1. <u>The Cause of Parkchester's Bankruptcy</u>. If a bankruptcy case has been prompted by prior issues relating to patient care then that is a factor that suggests that patients require oversight for their protection. In this case, the admitted facts are that "there have been no issues with respect to the patient care provided by the Debtor" and that Parkchester's financial problems "had nothing to do with patient care." *See* Moore Affidavit [ECF No. 33] ¶ 4. This factor therefore weights against the appointment of a patient care ombudsman. *See Aknouk*, 648 B.R. at 764.

2. <u>The Presence and Role of Licensing or Supervising Entities</u>. Parkchester has confirmed that it requires licenses for the conduct of its business and that it is up to date on all such licenses. It is also current on its insurance. It is not entirely clear whether licensing boards conduct periodic inspections (a point not addressed in Mr. Moore's affidavit). However, it appears there is no history of patient care issues or patient complaints. This factor weighs against the appointment of an ombudsman. *Id*.

3. <u>The Debtor's Past History of Patient Care</u>. As noted above, Mr. Moore has confirmed that there have been no issues with respect to patient care as to Parkchester, and no issues as to Mr. Moore personally during his thirty years of practice. This factor weighs against the appointment of a patient care ombudsman. *Id*.

4. <u>The Ability of Patients to Protect Their Rights</u>. Minors, elderly patients and persons who are mentally incapacitated may have limited abilities to protect their own rights. There is no

8

information in Mr. Moore's affidavit as to the make-up of Parkchester's pool of patients. I note, however, that Parkchester provides dentistry and dental surgery. This is not a nursing home or a facility that is dedicated to the service of a particularly vulnerable group.

5. <u>Patients' Dependency on the Debtor's Facility</u>. Patients who require in-patient or residential services are more dependent on a debtor and so may have greater need for an ombudsman who can supervise the quality of residential services and care. In this case, any surgery that Parkchester conducts is purely on an out-patient basis. Any patient who is dissatisfied at all with any element of patient care is free to turn to another professional for help, and is not dependent on Parkchester in that regard. This factor weighs against the appointment of an ombudsman. *Id.*

6. <u>Likelihood of Tension Between the Interests of the Patients and the Debtor</u>. There is no reason why Parkchester's interests should conflict in any way with the interests of patients. Parkchester's problems are with loans it obtained from TD Bank. It has no history of malpractice problems and its bankruptcy was not filed for the purpose of addressing malpractice claims. There are orders in place that allow Parkchester to use cash collateral and to run its business consistent with its ordinary and historical practices. The business depends on the successful treatment of patients, and in that regard there is no tension between the interests of Parkchester (and its lender) and the interests of patients.

7. <u>Potential Injury to Patients if Parkchester Drastically Reduced Its Level of Patient Care</u>. Courts have held that facilities that provide inpatient or critical care services carry significantly more risk of patient harm if there is a decline in patient care, which may increase the need for an ombudsman. *Id.* In this case, all services that Parkchester provides are on an out-patient basis. It does not provide inpatient or critical care.

9

8.      <u>The presence and sufficiency of internal safeguards</u>.  The Moore affidavit did not address this factor specifically.  However, as stated above Parkchester has had no issues with patient care and is up-to-date on all licenses and insurance needs.  If there were reason to be concerned about patient care then I would place greater emphasis on the extent to which internal safeguards or other external monitoring is in place, but I see no such need here.

As noted above, courts have identified four additional factors that may be relevant in particular cases.  These factors also suggest that an ombudsman is not needed in this case.

1.      <u>High Quality of Existing Patient Care</u>**.**  As noted above, the parties have agreed that Parkchester has not had issues with patient care in the past, and has no such issues now.

2.      <u>Parkchester's Financial Ability to Maintain Care</u>.  Parkchester has adequate resources (though its ongoing business and also through the cash collateral stipulations that the Court has approved) to conduct its business and to maintain the high quality of its existing patient care.

3.      <u>Existence of an Internal Ombudsman</u>.  I have discussed this above in considering factor # 8.  There is no indication that Parkchester has in place any program that would be similar to what an ombudsman would do.  However, the primary question is whether an ombudsman is needed at all.  The fact that no similar program has been identified is not of much weight when the facts suggest that an equivalent program is not needed.

4.      <u>Level of Governmental Oversight</u>.  This, too, is similar to the factor discussed in point 8, above.  The Moore affidavit did not describe any particular monitoring, inspections or oversight by federal, state, local, or professional associations.  Certainly the existence of such oversight could render the services of an ombudsman irrelevant.  However, the primary question is whether an ombudsman is needed at all.  The fact that Parkchester has not identified

governmental or professional services that already perform that function is not decisive in the absence of any indication of any need for such supplemental monitoring.

I am convinced that a patient care ombudsman is not needed for the protection of patients under the specific facts of this case, given the limited nature of the outpatient services that Parkchester provides, the agreed fact that it has had no issues regarding patient care, and patients' lack of dependence on the particular facilities of Parkchester. If I were to phrase this in terms of the simplified test advocated by the UST I would conclude that patient care is not a concern in this case, that adequate safeguards are in place to protect patients and that the appointment of an ombudsman would serve no legitimate purpose.

## Conclusion

For the foregoing reasons:

1. The deadline for the filing of a motion seeking a determination that a patient care ombudsman is not required shall be July 25, 2023.

2. Parkchester's July 24, 2023 opposition to the UST's motion for the appointment of a patient care ombudsman will be treated as a timely motion under Fed. R. Bankr. P. 2007.2(a) and 2007.2(d) seeking a determination that an ombudsman is not needed.

3. Parkchester's motion seeking a determination that an ombudsman is not needed is granted, and the UST's motion seeking the appointment of an ombudsman is denied.

A separate Order will be entered to reflect the Court's rulings.

Dated: New York, New York
September 6, 2023

s/Michael E. Wiles
Honorable Michael E. Wiles
United States Bankruptcy Judge
